UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 08-14-GWU


ALMARIA NAPIER,                                               PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-14  Almaria Napier

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-14  Almaria Napier

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Almaria Napier, filed her current application for SSI on April 12, 2005, alleging disability beginning January 1, 2004 due to nervousness, back, neck, and joint problems, and mitral valve prolapse.  (Tr. 55-61, 70-1).  After hearing her testimony and reviewing the evidence, an Administrative Law Judge (ALJ) found that she had "severe" impairments consisting of degenerative disc disease, anxiety, and depression.  (Tr. 20).  Despite these impairments, the ALJ concluded that Mrs. Napier, a 35-year-old woman with a high school equivalency diploma and training as a cosmetologist, could perform her past relevant work as a title clerk/cashier for a car dealership and as an apprentice hairdresser, and therefore terminated the sequential evaluation at Step 6 of the <u>Garner</u> analysis.  (Tr. 26-8).  The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether substantial evidence exists to support the administrative decision.

The plaintiff had filed a previous application for benefits in 2002 which was denied at the initial level on April 29, 2003 and not further pursued.  The ALJ declined to reopen the prior application.  (Tr. 18).

The plaintiff's primary argument on appeal is that she submitted evidence showing that she met the Commissioner's Listings of Impairments 1.04, 12.04, and 12.06.  In order for claimants to meet or equal the Listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix No. 1 they must show that their impairments meet all of the specified medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). This the plaintiff has failed to do.

LOI 1.04 refers to "disorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord."  If a claimant can show one of these conditions, one of the following three factors must also be shown.

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging,

manifested by chronic nonradicular pain and weakness, and resulting
in inability to ambulate effectively, as defined in 1.00B2b.

However, there is no evidence that the plaintiff's spinal problems, which
consisted of "small posterior marginal osteophytes" of the cervical spine "mildly
indenting the thecal sac" and degenerative disc disease and a small bulge at one
level of the lumbar spine (Tr. 355-6) resulted in any nerve root compromise.  A
consultative examiner, Dr. Theodros Mengesha, examined the plaintiff in June,
2005, and found no evidence of any decrease in range of motion, motor loss,
limitation of motion, or positive straight leg raising.  (Tr. 258-9).  Dr. James Bean,
a neurosurgeon, found no motor or sensory loss, no reflex asymmetry, and no gait
disturbance in November, 2005.  (Tr. 331).  The plaintiff's treating family physician,
Dr. Jack W. Cope, found negative straight leg raising and grossly intact neurological
functioning in December, 2005.  (Tr. 362).  Accordingly, the ALJ's determination that
this Listing was not met is supported by substantial evidence.

LOI 12.04, captioned "Affective Disorders," provides for a finding of disability
in individuals who have a "disturbance of mood, accompanied by full or partial
manic or depressive syndrome."  The plaintiff asserts that she has shown that she
has both a depressive syndrome and a bipolar syndrome which would result in
marked restrictions of her activities of daily living and marked difficulties in
maintaining social functioning.  A consultative psychological examiner, Barbara
Belew, examined the plaintiff in July, 2006 and did diagnose a major depressive

disorder, features of post-traumatic stress disorder, and features of borderline personality disorder and opined that there would be "marked" restrictions of activities of daily living because she relied on family and a friend to complete most activities around her home, and had marked restrictions on social functioning because she isolated herself from others as much as possible and interacted only with those who came to her home.  (Tr. 397-8).  Dr. Belew also opined that LOI 12.06, relating to anxiety disorders, could "possibly" be involved, but was not definite.  (Tr. 397).  The ALJ agreed with prior state agency psychological reviewers that the plaintiff had no more than a "mild" restriction in activities of daily living and "moderate" difficulties in maintaining social functioning.  (Tr. 25, 276, 295).  The plaintiff had alleged at the time of her application that she could not perform daily activities or interact socially because of physical pain rather than depression or anxiety.  (Tr. 79-84, 90).  The plaintiff's mother stated that she was able to get her children off to school, spend time with other people approximately three times a week, and go to doctor's appointments and church.  (Tr. 99-103).  Although she was psychiatrically hospitalized in March, 2005 after feeling "overwhelmed" by her family situation after a divorce, she was discharged with a diagnosis of only an adjustment disorder and a Global Assessment of Functioning (GAF) score of 80.  (Tr. 233-5).  A GAF score of 80 reflects only transient symptoms causing no more than a slight impairment in social, occupational, or school functioning.  Diagnostic and Statistical

08-14  Almaria Napier

Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.  Her treating psychiatrist at the inpatient admission, Dr. Syed Raza, continued to treat the plaintiff through the local Comprehensive Care Center (CCC) and in March, 2006 indicated that her diagnosis was recurrent major depression and "rule out" post-traumatic stress disorder primarily related to conflict with her ex-husband.  (Tr. 310). Her GAF score was said to be 54, reflective of no more than "moderate" impairment per the DSM-IV-TR.  Another examiner, Psychologist Jeanne Bennett, had also diagnosed a moderate recurrent depressive disorder in June, 2005, but noted that she would have only moderate limitations in her ability to interact appropriately with fellow workers and supervisors and sustain attention and concentration toward the performance of simple, repetitive tasks.  (Tr. 255).  The state agency psychologist found only a moderate limitation in one area of social interaction, namely dealing with the general public.  (Tr. 262, 281).  Since Dr. Belew was a one-time examiner, her opinion is not entitled to the deference given to a treating source, and the opinions of the other examiners and the information supplied by the plaintiff and her mother regarding daily activities and social functioning is sufficient, under the circumstances of this case, to support the ALJ's conclusion that the plaintiff did not have the marked limitations alleged by her counsel.

The plaintiff's other argument is a conclusory allegation that she has established that she was unable to return to her prior relevant work and the

11

Commissioner failed to prove that there was work in the national economy that she could perform.  The plaintiff does not specifically challenge the ALJ's conclusion that she could perform "light" level work with the option of sitting or standing every 30 minutes and would have a "limited but satisfactory"' ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stresses, and understand, remember, and carry out detailed instructions.  Regarding the physical restrictions, the ALJ could reasonably have relied on the conclusion of Dr. Mengesha that the plaintiff would have no restrictions.  (Tr. 260).  While there is evidence of somewhat greater restriction in a functional capacity assessment submitted by Dr. David Muffly (Tr. 360), there are no examination notes from Dr. Muffly contained in the court transcript.[1]  Regarding the mental impairments, although the ALJ's restrictions did not exactly track the findings of the state agency reviewers, who found moderate restrictions in the areas of maintaining attention and

---

[1]The plaintiff refers to a 2004 examination by Dr. Muffly in her brief.  Docket Entry No. 10, p. 6.  Her brief contains no references to page numbers in the court transcript, which considerably lessens its usefulness, but, in any event, a careful review of the available exhibits shows no examination report by Dr. Muffly.  The plaintiff's brief contains references to other medical records which are also not in the transcript.  These include a number of examinations which occurred well before her alleged onset date.  Docket Entry No. 10, pp. 2-5.  Both the ALJ and the Commissioner appear to partially rely on evidence which was obtained in connection with the plaintiff's prior application and which is of limited relevance to the period under consideration unless the ALJ was reopening the prior, final decision.  This is particularly true of an April, 2003 psychiatric evaluation by Dr. Kevin Eggerman.  (Tr. 22, 211-16).  Dr. Eggerman's examination took place approximately eight months before the plaintiff's alleged onset date.

concentration for extended periods, interacting appropriately with the general public, responding appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others (Tr. 261-2, 280-1), the plaintiff has failed to produce any evidence that such limitations would preclude the performance of her clerk position at a car dealership or her job as a hairdresser. [2] Therefore, the plaintiff did not carry her burden at Step 6.

The plaintiff also submitted additional evidence to the Appeals Council reflecting treatment after the date of the ALJ's decision.  (Tr. 419-562).  Evidence that was not available to the ALJ cannot be considered as a part of this court's substantial evidence review unless it is shown that the evidence is both new and material and there was good cause for failing to submit it in connection with the prior proceedings.  Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996).   The new evidence shows that the plaintiff was admitted to a crisis stabilization unit more than six months after the date of the ALJ's decision in relation to a recent breakup and alleged threats from her ex-boyfriend.  (Tr. 425, 430).  The

---

[2]The plaintiff did submit a report from a vocational expert, William W. Ellis, which concluded that she was "100 percent vocationally disabled" because physical pain would affect her stamina and reliability in working a full-time job.  (Tr. 307).  Clearly, if the plaintiff was unable to work 40 hours a week due to pain, the opinion of Mr. Ellis would be persuasive, but he did not address any restrictions on work activity due to mental factors alone.

13

08-14  Almaria Napier

plaintiff has not shown how this later incident establishes disability more than six

months earlier.  Therefore, it does not provide material grounds for a remand.

The decision will be affirmed.

This the 8th day of October, 2008.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**